ORISKER SWAN *v.* STATE OF INDIANA.

[No. 677S409. Filed April 28, 1978.]

*Jere L. Humphrey, Chipman, Morrison & Humphrey,* of Plymouth, for appellant.

*Theodore L. Sendak,* Attorney General, *Alembert W. Brayton,* Deputy Attorney General, for appellee.

HUNTER, J.—The defendant, Orisker Swan, was convicted by a jury of first-degree murder and robbery. He was sentenced to concurrent terms of life and fifteen years respectively, and now appeals raising the following issues:

1. Whether the defendant was denied fundamental due process because of prejudicial comments of his trial counsel during voir dire;

2. Whether the defendant was denied fundamental due process by the alleged reference of the prosecutor in closing argument to the polygraph examination of the witness, Jesse Taylor;

3. Whether the court erred in sustaining an objection to the questioning of one of the defendant's witnesses concerning an alleged prior shooting by the state's chief witness;

4. Whether the court erred in giving the state's instructions 4, 5 and 8 which omitted manslaughter while also giving verdict forms which included it;

5. Whether the court erred in refusing to grant a mistrial when the prosecutor repeated answers of witnesses; and

6. Whether the court erred in permitting testimony of two of the state's witnesses, Eric Israel and Larry Bowie.

A summary of the facts most favorable to the verdict from the record reveals the following. In the summer of 1974, Eric Israel, Jesse Taylor, and the defendant met at the defendant's home in Chicago, Illinois, and made plans to rob Bernard Ponder's house in Fulton County, Indiana. Israel lived in Fulton County and believed that Ponder's home contained pistols, rifles, merchandise, narcotics and maybe money. Several months later in December of 1974, the defendant and Taylor obtained a rental U-Haul truck in Chicago and picked up a mutual friend, Charles Hill. The defendant had a .25 automatic and Hill gave him a .45 automatic.

The three men then drove to Israel's house in Indiana. Israel helped them wrap a box like a parcel post package to be used as a decoy at Ponder's house. The defendant, Taylor, and Hill then drove to Ponder's house, but Israel did not accompany them. A tenant who was living there was tied up and forced to lie on the floor. The three men took a rifle, two television sets, an organ, and numerous other objects of value but were unable to find any money. Taylor was in the driver's seat of the cab of the U-Haul truck, Hill was in the middle, and the defendant was on the right side when they drove away from Ponder's house.

As they were driving along, Taylor heard a shot beside him in the cab of the truck. Hill was struggling with the defendant and said, "He shot me." Then Hill slumped over onto Taylor. The defendant ordered Taylor to pull over in a lonely area, and defendant carried Hill's body into the woods. Taylor then observed the defendant stab the body several times. Taylor and the defendant continued driving to Chicago where they stopped at the apartment of Larry Bowie. Bowie testified that there was blood on defendant's clothes that night, and that the defendant said he had killed Charles Hill.

Hill's body was found five days later in frozen condition in a wooded area of Starke County, Indiana. An autopsy established that death had resulted from a gunshot at close range. Taylor was subsequently arrested on other charges and told

police about these incidents in return for leniency. Israel was also charged but entered into a plea bargain with the state in return for his testimony against the defendant. Bowie, who was facing charges in Illinois for murder, agreed to testify in consideration for the state's assistance in Illinois.

## I.

The defendant first contends he was denied fundamental due process by the remarks and actions of his own counsel during voir dire. The record shows that early in his voir dire examination, the defendant's trial counsel referred to the defendant as "nigger" and "ordered" him to stand up. By this strategy, defense counsel dramatically and aggressively attacked the possibility of any latent racial or other prejudice which might exist among the jurors.

The record shows that the defendant had agreed to this strategy beforehand and cooperated therein. The defense counsel immediately followed his statements with questions to individual jury members such as:

"Did that shock you, . . . The fact that I would treat my own client that way shock you a little bit?"
and
"You understand I was trying to make an effect, don't you? You understand that I'm trying to guarantee that he gets a fair trial?"

It is clear that a defendant is entitled on voir dire to have the jurors asked whether they have any racial prejudice that would prevent a fair and impartial verdict. *Aldridge* v. *United States,* (1931) 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054. This Court has held that the ultimate function of voir dire is to explore the conscience of a prospective juror to determine whether he will be able to participate fairly in the deliberations. *Robinson* v. *State,* (1973) 260 Ind. 517, 297 N.E.2d 409. This exploration is largely within the discretion of the trial judge subject only to the essential demands of fairness. *Phelps* v. *State,* (1977) 266 Ind. 66, 360

N.E.2d 191. Where, as here, the statements were designed to sound the jurors' attitudes towards racial prejudice and the questions following the statements clearly brought out that purpose, and defendant himself had agreed to this strategy beforehand, the trial judge did not abuse his discretion in permitting this strategy. There was no denial of fundamental fairness under these circumstances.

## II.

At the beginning of the direct examination of Jesse Taylor, the state offered into evidence a plea agreement executed by Taylor. There was no objection to this evidence; it was admitted in its entirety and read to the jury. One paragraph of this agreement was as follows:

> "Wherein after further consultation by the Prosecuting Attorney with the Chief Investigating Officer, Arland Boyd of the Indiana State Police and after a review of certain polygraph exams taken by the Defendant Jessie Taylor a/k/a Larry Taylor a determination that the said Jessie Taylor a/k/a Larry Taylor was willfully involved only in the alleged robbery and was at most an accessory after the fact to the murder. . . ."

The defendant contends that during the final argument, the prosecutor referred to the fact that Taylor took a polygraph test and that this reference was reversible error.

It is the clearly established rule that even the mention that a defendant or a witness took a polygraph examination, absent some form of waiver, will not be permitted. *Serrano* v. *State*, (1977) 266 Ind. 126, 360 N.E.2d 1257; *Phelps* v. *State*, (1977) 266 Ind. 66, 360 N.E.2d 191; *Austin* v. *State*, (1974) 262 Ind. 529, 319 N.E.2d 130, *cert. den.* 421 U.S. 1012, 95 S.Ct. 2417, 44 L.Ed.2d 680. Here, however, the plea agreement was originally introduced without objection. Defense counsel had been given a copy of the plea agreement a week before trial. Since he has failed to make a timely objection to the original mention of the poly-

graph test, defendant has waived his right to have all mention of the test excluded.

Evidence may be properly read to the jury during final argument. *Jenkins* v. *State*, (1975) 263 Ind. 589, 335 N.E.2d 215; *Hendrix* v. *State*, (1974) 262 Ind. 309, 315 N.E. 2d 701. Only if a prosecutor's statement is so prejudicial as to place the defendant in "grave peril" must the case be reversed. *Maldonado* v. *State*, (1976) 265 Ind. 492, 355 N.E.2d 843; *White* v. *State*, (1971) 257 Ind. 64, 272 N.E.2d 312; *Phelps, supra*. In the instant case, the mention of the fact that a witness took a polygraph examination was not so prejudicial as to have placed the defendant in grave peril since this fact had already been properly admitted into evidence without objection during the trial.

### III.

Jesse Taylor was the only eyewitness to the murder of Charles Hill. At one point during the trial, defendant called a witness, Donald Dunn, to the stand. Dunn was a friend of Taylor who was called for the purpose of establishing that Taylor had shot him during an argument three years previously. The defendant alleges that this previous shooting would show that Taylor had committed a previous, similar crime and might have a motive for testifying falsely in the instant case.

It has long been settled in this state that a witness cannot be impeached by proof of particular extraneous acts of misconduct, which are not reduced to convictions. *Niemeyer* v. *McCarty*, (1943) 221 Ind. 688, 51 N.E.2d 365; 3A WIGMORE EVIDENCE §§ 977-988 (Chadbourn Revision). This Court has further held that only certain convictions will be allowed to be introduced for impeachment purposes. *Ashton* v. *Anderson*, (1972) 258 Ind. 51, 279 N.E.2d 210; M. SEIDMAN, pp. 38-41, THE LAW OF EVIDENCE IN INDIANA, (1977).

The testimony in the instant case which was excluded did not concern a specific conviction which would be allowed under *Ashton, supra*. Additionally, this testimony does not fall within any prior crimes exception and has no probative effect as substantive evidence. Therefore, there was no error in the exclusion of this testimony.

## IV.

The defendant contends that it was error for the court to give instructions 4, 5, and 8 over the defendant's objection because they left out the lesser included offense of manslaughter. However, defendant waived any alleged error here by failing to submit to the trial court his own desired instructions covering this offense. *Rufer* v. *State*, (1976) 264 Ind. 258, 342 N.E.2d 856; IND. CODE § 35-1-35-1 (Burns, 1975).

The defendant further alleges that the court erred in listing voluntary and involuntary manslaughter on the verdict forms when these two offenses were not described in the instructions. However, the record does not show any injury to the defendant resulting from the use of these forms. The jury rejected the lesser included offense of second-degree murder which *was* defined in the instructions in favor of the charged offense of first-degree murder. Any prejudice in listing the still lower included offenses was against the state and not against the defendant.

## V.

Defendant alleged as an error that the prosecutor repeated answers of witnesses and thereby gave undue stress to certain answers. However, defendant has failed to brief this argument and has not cited any authority. This issue is thereby waived. Ind. R. Ap. P. 8.3 (A) (7) ; *Foster* v. *State*, (1974) 262 Ind. 567, 320 N.E.2d 745.

## VI.

The record shows that the defendant received from the state one statement given to the police by the witness, Eric Israel. The defendant had also taken a deposition of Israel in which Israel stated that he had given three statements to the police. On cross-examination, Israel confirmed that he had talked with the police three times. At this point, defendant moved for a dismissal or in the alternative that Israel's testimony be stricken on the theory that defendant had not been given all the witness's statements. He also contends that the state had ignored a pre-trial order which stated that all statements from all witnesses must be produced by the state.

The record shows, however, that the prosecutor stated, "They've got everything I've got, Your Honor. We've got one transcribed statement." Defendant's motions were correctly denied because he failed to establish that this evidence would have been exculpatory or that any other statements existed. *State ex rel. Keller* v. *Criminal Court of Marion County, Division Four*, (1974) 262 Ind. 420, 317 N.E.2d 433; *Antrobus* v. *State*, (1970) 253 Ind. 420, 254 N.E.2d 873.

Defendant further contends that the testimony of Larry Bowie was improperly permitted since defendant had not had a chance to interview him prior to trial. There is no merit to this contention. The record shows that the name of Larry Bowie was on the witness list given to the defendant along with the evidence to which he would be asked to testify. Bowie was a fugitive and was not available to either the defendant or the state until 5:30 p.m., October 13, one day after the trial had started. The prosecutor told the defendant that Larry Bowie refused to talk. Apparently Bowie changed his mind on October 15 and agreed to talk. He was called as the last witness for the state. The defendant at that time did not request a continuance or the right to depose Bowie, but instead waived such rights and cross-examined Bowie. He has waived any right to object to

Bowie's direct examination by failing to make a timely objection before the direct examination. *Dull* v. *State,* (1962) 242 Ind. 633, 180 N.E.2d 523; *Gamble* v. *Lewis,* (1949) 227 Ind. 455, 85 N.E.2d 629. There was no denial of due process of law under these circumstances.

For all the foregoing reasons, there was no trial court error, and the judgment of the trial court should be affirmed.

Judgment affirmed.

Givan, C.J., Prentice and Pivarnik, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 375 N.E.2d 198.