Rex E. WINNINGHAM, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 780S212.

Supreme Court of Indiana.

March 10, 1982.

**26**

Harriette Bailey Conn, Public Defender, Kurt A. Young, M. E. Tuke, Deputy Public Defenders, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Murder, Ind.Code § 35–42–1–1 (Burns 1979) and was sentenced to a term of thirty-five (35) years imprisonment. This direct appeal seeks review upon the following issues:

(1) Whether the trial court erred in admitting into evidence a tape recording of the defendant's telephone call to the police?

(2) Whether the trial court erred in admitting a police officer's testimony into evidence relating to statements of a witness and the re-enactment of the crime.

(3) Whether the trial court erred in admitting a transcript of the defendant's grand jury testimony into evidence?

(4) Whether the trial court erred in informing the jury in writing that an exhibit would not be sent to them during deliberations?

(5) Whether the trial court erred in allowing the prosecutor, during voir dire examination of the prospective jurors, to contradict defense counsel's prior explanation of Defendant's status under the legal presumption of innocence?

(6) Whether the trial court erred in denying defendant's motion for discharge for delay in bringing him to trial?

(7) Whether the trial court erred in not admonishing the jury following an unsolicited reference by a witness to the taking of a polygraph examination?

On July 27, 1979, the Defendant picked up his wife, Laureen, early at work and commenced a conversation regarding her alleged marital infidelity. After a brief argument at the couple's home, the defendant ordered her to pack her clothes, leave her wedding ring, credit cards and checkbook and to leave the house. Laureen then requested that the Defendant take her back to work, to which the Defendant responded that she should have her "boyfriend" "Randy" pick her up. She called the friend and then began to pack her clothes into a suitcase. During this time, Defendant disconnected the telephone and loaded his 12-gauge shotgun. Laureen tried to flee, but the Defendant caught her and returned her to the house. Randy arrived at the house, at which time the defendant disengaged the safety mechanism of the shotgun and approached a window facing Randy. Laureen then tried to grab at the gun or to remove it from the Defendant's hands, but failed and was struck by the defendant. At the same moment, the gun fired, and Randy was struck by the shot as he was walking toward the front door of the house.

Laureen fled from the house, and Defendant reconnected the telephone and called the 911 police emergency number and announced that he had just killed a man. This telephone call was recorded by the police, who dispatched an ambulance and a sheriff to the house. Paramedics were unable to revive the deceased.

\* \* \*

ISSUE I

A cassette tape recording of Defendant's telephone conversation with the police was entered into evidence, over Defendant's objection. Defendant contends that the evidence was admitted in error in that the recording contained inadmissible matter and that portions of the tape were unintelligible and confusing to the jury.

We have listened to the recording and have determined that there was no error in its admission. The recorded message begins with the Defendant's reporting that he had just killed a man. His responses to police questions about the cause of the shooting, the location of his guns, and the location of the deceased is then related. One can clearly hear the Defendant's responses until other unrelated police transmissions begin to take place, which obfuscates the Defendant's responses to police questions during the latter portions of the conversation. The major details of the conversation had been recorded before the competing transmissions commenced.

The trial judge listened to the recording, found it to be intelligible and enlightening, and ruled it admissible. He admonished the jury to disregard any information on the tape that did not pertain to the Defendant's case.

Defendant contends that the audio quality of the tape fell short of the standards set forth in *Lamar v. State*, (1972) 258 Ind. 504, 513, 282 N.E.2d 795, 800, wherein this Court stated that, to be admissible, the tape recording must be of "such clarity as to be intelligible and enlightening to the jury." Defendant argues that the audio quality of the recording, coupled with the confusion of Defendant's telephone conversation with another police call, lead to improper jury speculation regarding the contents of the Defendant's conversation.

*Lamar* only sets forth guidelines for the trial court to follow in ruling on the admissibility of recording. The trial court possesses wide discretion with respect to whether or not the *Lamar* guidelines have been met. A recording's audibility is of necessity subject to wide variances in quality, depending for instance on such factors as the sound systems utilized by the court, the taping system of the police, and the acoustics of the courtroom. We accord the trial court substantial latitude in its review of the tape's audibility. There was no error in admitting the recording into evidence. *See Smith v. State*, (1979) Ind., 397 N.E.2d 959.

Defendant further contends that it was error to play the recording because it contained matter otherwise inadmissible as evidence. It should be noted that the *Lamar* case concerned an in-custody interrogation by police with its attendant great concern for the Defendant's constitutional rights. The instant case involves, by contrast, a voluntary telephone call to the police, with a recording incidental to the police procedures. Strict adherence to the *Lamar* safeguards, therefore, was not so critical.

## ISSUE II

Defendant also assigns as error the admission of testimony by a police officer as rebuttal evidence.

Upon cross-examination by the prosecution, witness Laureen Winningham had difficulties recalling the details of her three statements to the police. She did not recall many of the questions asked of her by Captain Snyder, and similarly she recalled few of her responses to the questions. Following the close of the defendant's case, the prosecution called Captain Snyder to testify, on rebuttal, about his interview with the witness. Defendant objected to the testimony on the basis that it was an attempt to impeach Laureen's testimony, by showing prior inconsistent statements.

The record reveals that, rather than impeaching, Snyder's testimony appears to fill in gaps of her testimony. Snyder testified that his questions to her concerned her position relative to the defendant when the fatal shot was fired by the defendant. With a deputy prosecutor, Snyder attempted to demonstrate, by re-enactment of a demonstration of the shooting which he testified had taken place during his questioning of Laureen.

Defendant correctly states that a witness may be impeached after stating that she denies or cannot recall her statements upon being confronted with the prior inconsistency. However, in the instant case, Snyder's testimony was offered to prove the truth of the matter asserted by

Laureen to Snyder. The proper objection to such testimony would have been that it was hearsay. Yet, that is not the basis articulated for Defendant's objection. Counsel must state the proper basis for an objection before it will be deemed to have been properly brought to the trial court's attention. *State v. Maplewood Heights Corp.*, (1973) 261 Ind. 305, 308, 302 N.E.2d 782, 785, *Brown v. State*, (1980) Ind.App., 403 N.E.2d 901, 911.

## ISSUE III

Defendant next contends that it was error to admit into evidence a transcript of his grand jury testimony.

Defendant voluntarily appeared before the grand jury, said that he understood his constitutional rights, and then testified concerning the events surrounding the shooting. The testimony was admitted at trial, over Defendant's objection.

We do not understand Defendant's argument that "no proper foundation had been laid for its admission in the State's case in chief." It appears that the trial court determined that the grand jury testimony had been given voluntarily, hence no fifth amendment violation appears. Defendant argues that the introduction of such evidence virtually compelled him to testify—implying that but for such evidence he would not have taken the witness stand. We are aware of no rule that protects the accused from the consequences of exercising his rights against self-incrimination. If incriminating evidence has been presented that a defendant can rebut or explain only by testifying, he must elect whether or not to do so. He is entitled to make the choice but to no more, and that choice may be difficult.

"Testimony which a person gives before a grand jury, just as any conversation which he may have concerning a crime with which he is charged, is ordinarily admissible." *Layman v. State*, (1962) 242 Ind. 62, 67, 176 N.E.2d 120, 122.

## ISSUE IV

Defendant next contends that a written communication by the trial court to the jury during its deliberations should be characterized by an impermissible instruction.

The defendant's 12-gauge shotgun was introduced as an exhibit at trial, but the jurors were not permitted to take the weapon to the jury room when they retired to deliberate. During the deliberations, the jury made a written request to view the shotgun. The trial court informed the parties of this request, held a hearing, and then ruled that the exhibit should not be sent to the jury. He informed the jury of his ruling in writing. Defendant's request for the ruling to be made in open court was denied, and Defendant now argues that the transmission of such written communication with the jury was reversible error.

This Court has stated that communications from the trial court to the jury pertaining to the substantive rights of the defendant must be made in open court. *Deming v. State*, (1956) 235 Ind. 282, 133 N.E.2d 51. Defendant contends that the trial court's written response to the jury, in effect, commented upon the evidence and, therefore, affected Defendant's substantive rights. In part, Defendant's assertion is made because the jury returned its verdict shortly after receiving the trial court's written response, but that cannot be viewed as indicative of harm. Such response to the jury, in the instant case, is not unlike that in *Foster v. State*, (1977) 267 Ind. 79, 367 N.E.2d 1088, wherein we held that it was not error for the court to advise the jury, in writing, that the court could not answer the jury's question and that their verdict must be based solely upon the evidence presented in the trial.

The trial court's written note to the jury was consistent with earlier instructions that they would not be allowed to take exhibits with them when deliberating. The note cannot be construed as a commentary upon evidence as occurred in *Wallace v. State*, (1981) Ind., 426 N.E.2d 34, 36 (cases cited therein), and we find no error.

## ISSUE V

 Defendant contends that various statements made by the prosecutor, during the voir dire examination of the prospective jurors, concerning the presumption of innocence were so prejudicial as to deny him due process of law.

On voir dire examination, the following exchange took place:

"Mr. Biddlecome (Prosecutor): There is another misconception or misunderstanding that has arisen, Mr. Miller (Defense Counsel) repeatedly indicated that the defendant is innocent as he sits there. That ain't the law."

"Mr. Miller: I'll object, Your Honor. That is the law. Whether the word presumption, or anything else is used, he is innocent.

\* \* \* \* \* \*

"Mr. Miller: Your Honor, the statement made by Mr. Biddlecome is that it is not correct that the defendant is innocent as he sits there. That is correct. It is also correct if he wants to phrase it that way, that he is presumed to be innocent. Presumption means that he starts innocent, he is innocent as he sits there.

\* \* \* \* \* \*

"Mr. Biddlecome: Nor is he guilty as he sits there. He is presumed to be innocent. The State has an obligation to rebut, if you will, and overcome the presumption. If—there is only one way that we can do that, and that is prove that he is guilty beyond a reasonable doubt. If we fail to do that, he remains presumed to be innocent, he is innocent. We've had our day in court, we failed to meet our burden. He's neither guilty nor innocent right now. That—the issue has not yet been determined."

Defendant then objected on the grounds that the prosecutor's statement was an improper statement of the law that served to confuse the prospective jurors. This objection was overruled.

The prosecutor's comments were in response to defense counsel's prior statements that had gone well beyond the purpose of voir dire examination, which is to search for and eliminate bias but not to condition prospective jurors to be receptive to the examiner's evidence. *Robinson v. State* (1977) 266 Ind. 604, 365 N.E.2d 1218. Defense counsel had said, "We've used the phrase presumption of innocence. I hate the word presumption. That's a phony word. It means the defendant, Mr. Winningham is in fact innocent, right now." and had extracted an expression from at least one prospective juror that he thought the defendant to be "innocent" and "wrongfully charged."

Without passing judgment upon the prosecutor's statements as correct statements, suitable for instructions, they were not incorrect in the context of voir dire examination. We fail to see how they could have harmed the defendant in view of the court's instructions upon the subject.

 It should also be observed that Defendant preserved no error for review in this regard. He made no request for an admonition or discharge of the prospective jurors who might have been affected. Neither has it been shown that any of the jurors who were selected and heard the case were among those exposed to the allegedly improper remarks.

## ISSUE VI

 Defendant also assigns as error the denial of his motion for discharge, by reason of a delay in bringing him to trial. He premises his entitlement to discharge upon state tactics and a delay by the court in ruling upon a discovery motion which, he claims, forced him to request the continuance that postponed the trial to a date which was beyond the limit of the seventy (70) day rule.

On August 23, 1979, the cause was set for trial on December 10, 1979. On October 2, 1979, Defendant moved for an early trial, and it was noted by the court that the December 10th trial date was within the seventy (70) day period allowed under the rule.

On December 7, the prosecutor notified defense counsel of a newly discovered wit-

ness who might be called; and on December 10, the day set for trial Defendant moved for a continuance of one or two days to permit him to depose the aforementioned witness. The court observed that, according to both defense counsel and the prosecutor, the case would take approximately two weeks to try and that the next available date that would accommodate such a trial would be January 7, 1980. The cause was re-set for that date, and Defendant made no objection.

On December 28, 1979, Defendant moved for discharge, for failure to bring him to trial within seventy (70) days of the filing of his early trial motion. Ind.R.Cr.P. 4.

By failing to object to the setting of the trial for a date beyond that allowed by the rule, the defendant acquiesced therein. *Utterback v. State*, (1974) 261 Ind. 685, 686, 310 N.E.2d 552, 553.

Defendant argues that he was coerced into seeking the continuance by the court's delay, until December 7, to rule upon a discovery motion filed November 19 and by the prosecutor's aforesaid notification of the newly discovered witness, but we do not accept such rationale. One seeking an early trial bears the burden of being ready for trial upon the same basis that prevails when the proceedings take their normal course. The delay from December 10 to January 7 was chargeable to the defendant.

### ISSUE VII

■ Defendant contends that it was fundamental error for the trial court not to admonish the jury following a witness' repeated unsolicited references to a polygraph examination.

During cross-examination, the prosecutor attempted to question the Defendant's wife concerning statements which she had given to police during a series of interrogations. The witness was confused and unexpectedly referred to a polygraph examination that she had taken, although she made no comment concerning the results of the examination.

Defendant concedes that his failure to make a timely objection to the mention of the polygraph examination would generally constitute a waiver of his right to have the jury admonished. *Swan v. State*, (1978) 268 Ind. 317, 375 N.E.2d 198. However, he now contends that the trial court should have *sua sponte* admonished the jury to disregard comment and asserts that its failure to do so was fundamental error.

"To be categorized as fundamental error and thus to transcend our procedural requirements, the error must be blatant and the potential for harm must be substantial and appear clearly and prospectively." *Nelson v. State*, (1980) Ind., 409 N.E.2d 637, 638. The record demonstrates that the witness blurted out her references to the polygraph examination in response to questions by the prosecutor that were designed to elicit other answers. No comments were made disclosing the results of the examination, nor did the prosecutor try to develop further testimony based upon the witness' unresponsive answer. Neither do we think that the mere mention that the witness had taken such an examination had a potential for inflicting substantial harm upon the defendant. Hence the error, if any, was not "fundamental."

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.