Kerry L. WILLIAMS, Appellant,

v.

STATE of Indiana, Appellee.

No. 1281S365.

Supreme Court of Indiana.

Oct. 21, 1983.

⚷1159.4(6)

Susan K. Carpenter, Public Defender, Jay Rodia, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Latriealle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Kerry L. Williams was convicted by a jury in the Elkhart Circuit Court of the crime of robbery while armed resulting in bodily injury, a class Á felony, and was sentenced to a term of fifty (50) years. Defendant Williams raises thirteen issues for our review in this direct appeal as follows:

1. sufficiency of the evidence;

2. denial of the defendant's motion to suppress the testimony of Patricia Kramer;

3. denial of the defendant's Motion in Limine regarding in-court identification of the defendant;

4. improper testimony from witness Pam Gentle;

5. denial of the defendant's motion for mistrial based upon testimony of Pam Gentle;

6. admission of State's Exhibits I and II;

7. improper display of State's Exhibit II to the jury;

8. denial of the defendant's motion directed to the plea agreement entered into by the State and witness Yuonniec Starr;

9. admission of hearsay testimony of Officer Cutler;

10. denial of the defendant's motion in limine regarding use of the defendant's prior convictions;

11. denial of the defendant's pro se motion for mistrial;

12. denial of the defendant's motion for continuance and for mistrial regarding the State's withholding of exculpatory evidence; and

13. denial of the defendant's motion for a separate number of peremptory challenges from that of his co-defendant.

The evidence revealed that on November 16, 1979, at about 11:00 p.m., the Kroger Company Store located at 1720 Fulton Street, Elkhart, Indiana, was robbed at gunpoint by three black men. Gerald Casselman, an employee of the Kroger Company, was working as a night cashier at the time. One of the robbers demanded that Casselman open the safe. When Casselman explained he did not have the combination, he was struck on the head several times with a pistol. The robbers took $94.00 currency belonging to Kroger when they left the store. Casselman sustained an injury to his head that caused a slight loss of hearing in one ear and necessitated a physician's care.

Defendant Kerry L. Williams was identified as one of the robbers by witnesses to the crime. Co-defendant Hunt was also convicted of robbery by the jury and has appealed his conviction in a separate appeal which will be reviewed in a separate opinion. Yuonniec Starr testified that he was the third man taking part in the robbery. Starr testified for the State pursuant to a plea agreement and stated that Kerry Williams and Robert Hunt were the other two perpetrators of the robbery.

On January 9, 1980, the defendant and one Eddie Curry were arrested in Williams' automobile. A .38 caliber pistol was found in Williams' car lying on the floor of the front seat in front of Eddie Curry. Police Detective Homer Schenk testified that in a conversation with Kerry Williams on January 10, 1980, at the Elkhart Police Department, Kerry told Schenk that the .38 caliber pistol in the automobile was his. Witnesses testified the .38 caliber pistol was similar to the one used in the robbery.

I

The defendant claims there was insufficient evidence for the jury to find him guilty beyond a reasonable doubt of robbery, a class A felony. He contends that the eyewitnesses did not make an identification that was of sufficient reliability to support findings of guilt beyond a reasonable doubt. Patricia Kramer identified Williams as one of the defendants and identified his gun as the one he used in the robbery. Pam Gentle was not absolutely able to identify Williams but said his phy-

sique and head size resembled the man who committed the robbery. The defendant further claims that testimony of Yuonniec Starr should be discounted entirely because it is inherently improbable and unworthy of belief due to Starr's prior criminal record. Starr testified that he, Hunt, and defendant Williams robbed the Kroger store.

On appeal, of course, we do not reweigh the evidence nor judge the credibility of witnesses. Our standard of review has been well stated in prior opinions and the defendant indicated his awareness of this. *Raspberry v. State,* (1981) Ind., 417 N.E.2d 913. The determination of the credibility of Starr's testimony was before the jury and we will not substitute our judgment for the jury's. *Reynolds v. State,* (1980) Ind., 409 N.E.2d 639; *Haskett v. State,* (1979) 271 Ind. 648, 395 N.E.2d 229. Patricia Kramer testified that Robert Hunt grabbed her and placed a gun within four inches of her head and demanded her money. When she told him she had no money he released her and told her to lie on the floor. She observed the defendant for a period of five to ten seconds from a distance of seven feet in the well lighted store before he pulled a mask over his face. She saw the defendant strike employee Casselman in the head with a gun before Casselman opened the register. The testimony of all of these witnesses presented evidence to the jury from which they could find or infer that the defendant was, in fact, guilty of robbery, a class A felony, beyond a reasonable doubt.

## II & III

Issues II and III will be combined because they are similar in nature. Prior to trial, defendant Williams filed a motion to suppress the evidence with respect to his identification through the police lineup. Defendant claimed that the lineup was unnecessarily suggestive and conducive to irreparable mistaken identification. A hearing was held on March 12, 1981, and the trial court later denied the motion. In a related matter, prior to trial and outside the jury's presence, defendant Williams filed a motion *in limine,* requesting that in-court identifications be excluded in view of the prior identification procedures. He also requested that the identifications be excluded due to the length of time between the robbery and the trial, nineteen months. The trial court granted the motion *in limine* regarding in-court identification by Gerald Casselman, but not by eyewitnesses Patricia Kramer and Pam Gentle. The trial court specifically found that the two women had an independent recollection and that the "[S]tate has established by clear and convincing evidence that the in-court identification has an independent origin.... There's no showing of an illegal lineup as to Defendant Williams; ...."

The defendant now asks us to find that the trial court committed reversible error in denying the motion to suppress the testimony of Kramer and also in denying the motion *in limine* as to the identification testimony of Kramer and Gentle. We find, however, that the defendant has waived these issues. The in-court identification of the defendant by Patricia Kramer was done without objection by the defendant. When Pam Gentle testified that the defendant's physical body size was similar to that of the masked robber, identified as Williams by other witnesses, the only objection made by the defendant was that it should not be admitted because Gentle could not absolutely identify the defendant. There was no objection based on identification procedures which were impermissibly suggestive. Furthermore, as the State points out, nowhere in the defendant's argument does he challenge the admissibility of evidence of the out-of-court identifications, which he allowed to go into evidence without objection. He has therefore waived these issues. *Riley v. State,* (1981) Ind., 427 N.E.2d 1074, 1076; *Morgan v. State,* (1981) Ind.App., 427 N.E.2d 1131, 1133.

## IV

Defendant claims the trial court committed reversible error in allowing witness Gentle to testify that the defendant looked similar to the masked robber. Gen-

tle was not able to positively identify the defendant as the robber that put a mask over his face shortly after beginning the robbery but said that many of the defendant's features were the same as the robber's and the defendant looked similar to the robber. He claims this testimony was not admissible since Gentle could not positively identify him. As this Court said in *Armstrong v. State,* (1982) Ind., 429 N.E.2d 647, 651: "If the evidence only inconclusively connects the defendant with the crime, this goes to the weight, not the admissibility of the evidence." Again, the Court of Appeals stated in *Rhodes v. State,* (1972) 154 Ind. App. 594, 597, 290 N.E.2d 504, 506: "The identity of an accused is a question of fact and not a question of law. Therefore, the weight to be given identification evidence and any determination of whether it is satisfactory and trustworthy is a function of the trier of facts." The testimony of Pam Gentle was, accordingly, admissible and its weight was to be determined by the jury.

## V

■ Defendant claims that the trial court erred in denying his motion for mistrial based upon the testimony of Pam Gentle. The testimony in question regards co-defendant Hunt and is as follows:

"Q Did you see Mr. Hunt one night before—

A (Interrupting) No.

Q (Continuing)—in person?

A I had never seen him before until that night.

Q I'm talking about before today?

A In pictures?

Q Yeah.

A Yeah, and I saw him in the lineup.

Q And you said you were almost sure?

A By his facial features I think it's him.

Q On that other occasion earlier you said you were almost sure it was him; right?

A Yes, I did say that.

Q So the only other time you saw him you said you were almost sure that was him, not for sure but almost; right, is that correct?

A Yes, I guess I said that."

Defendant raised no objection to this testimony at the time it was given. Gentle completed her testimony and left the stand. The State then called Yuonniec Starr as its witness and the State completed direct examination of Starr. After the State had passed the witness, the trial court decided it was time to adjourn for the day. At this time, Hunt's counsel made a motion for mistrial based upon Gentle's testimony, set out above, and defendant Williams joined in that motion. The trial court took the matter under advisement and announced its ruling before proceedings commenced on the following day. The trial court expressed the opinion that the answer given was the answer invited and therefore denied the motion. The trial court offered to give an admonishment to the jury but apparently neither defendant acted on that offer.

We agree with the trial court that any error was waived because no objection was made at the time it was offered and the subsequent objection came too late. *Pavone v. State,* (1980) Ind., 402 N.E.2d 976, 979. The record discloses that the trial court had suppressed the out-of-court identification of Hunt and Hunt's motion and objection were based on that fact. The trial court still found that the answer to the question was invited by defense counsel and denied the motion for mistrial. Since Gentle's answer referred solely to Hunt, Williams has not shown how he was harmed by Gentle's statement that she saw Hunt in a lineup. She already had testified as to her ability to identify defendant Williams as outlined in Issue IV above. The propriety of the court's ruling in regard to Hunt will be considered in his appeal. Williams has shown no error or prejudice to him arising from this issue even if it could be assumed, *arguendo,* that he had properly raised it. We therefore find no merit in this issue.

## VI & VII

Defendant claims that sufficient foundations were not provided for admission of State's Exhibits No.'s I and II. State's Exhibit I was a leather jacket worn by Williams on the night he was arrested, and State's Exhibit II was a .38 caliber pistol used in the robbery. Witness Patricia Kramer testified that the robber who struck Gerald Casselman was wearing a brown leather jacket with a lot of zippers. This robber was later identified as the defendant. Officer Cutler identified State's Exhibit I as a brown leather jacket that defendant Williams was wearing the night that he was arrested at 8th and Indiana, and that he subsequently wore to the Elkhart Police Station. When State's Exhibit I was shown to Mrs. Kramer during her testimony, she testified it was the same jacket she saw the robber wearing at the time of the robbery.

Gerald Casselman identified the .38 pistol, State's Exhibit II, as being similar to the gun which was used to inflict injury upon him during the robbery. Pam Gentle identified State's Exhibit II as being similar to the gun she observed being used in the robbery. Yuonniec Starr identified State's Exhibit II as looking like "the pistol that belongs to Kerry Williams." He testified he believed Exhibit II to be the gun that defendant Williams had with him on the night of the robbery. Officer Cutler identified State's Exhibit II as the gun which was removed from the automobile the defendant was driving at the time of his arrest and Officer Schenk testified that the defendant told Schenk that the gun in the automobile at the time of the defendant's arrest belonged to the defendant. There was, therefore, ample identification of both of these exhibits to qualify them for admission into evidence. Where there is evidence of identification by direct testimony, objections to its sufficiency go to weight rather than to admissibility of articles. *Crosson v. State,* (1978) 268 Ind. 511, 376 N.E.2d 1136; *Pullins v. State,* (1970) 253 Ind. 644, 256 N.E.2d 553.

Defendant further contends that the trial court erred by permitting the prosecutor to present State's Exhibit II, the .38 pistol, in full view of the jury prior to its admission into evidence. He sought to have the trial court require the State to keep it out of view until it had been admitted. The trial judge responded that he could not even see the gun and doubted that the jury could. The State accommodated the defendant by moving the gun. Furthermore, in view of the fact that the exhibit was properly admitted into evidence, there is no merit whatever to this contention.

## VIII

Defendant claims that the trial court erred in allowing witness Yuonniec Starr to testify because, as the defendant alleges, the plea bargain agreement entered into between Starr and the State was defective. Defendant contends that in the plea bargain, the State promised to give Starr a conviction for a class C robbery, a sentence that could not legally be imposed for that crime, and to give him credit for time served that could not legally be credited to him.

After the testimony of another witness, and outside the presence of the jury, counsel for Hunt objected to the testimony of Starr based on these objections. The trial court noted the objection and took no further action. Later in the proceedings, Starr was called as a witness by the State and neither defendant Hunt nor Williams raised any objection to Starr's testimony at the time it was offered; thus they did not preserve any issue for review. *Riley v. State,* (1981) Ind., 427 N.E.2d 1074; *Harris v. State,* (1981) Ind., 427 N.E.2d 658. Furthermore, had the issue been properly raised, defects in the plea bargain do not necessarily render the testimony of the witness inadmissible. It would affect only the credibility of the witness and, as a matter of fact, the purpose for putting in the plea bargain was in regard to the witness' credibility. *Newman v. State,* (1975) 263 Ind. 569, 334 N.E.2d 684; *Lloyd v. State,* (1975) 166 Ind.App. 248, 335 N.E.2d 232. The

question of defects in the plea bargain may be raised by Starr in his cause, but have no reference to his testimony in this cause. *Irons v. State,* (1979) Ind., 397 N.E.2d 603. Defendant's only right was to disclosure of the plea bargain agreement. There is no error on this issue.

## IX

When the State called Officer Cutler to the stand he was asked several preliminary questions concerning the course of his investigation. Cutler testified that he had talked to Yuonniec Starr and Starr had told him that he, Starr, had loaned his automobile to Hunt and Williams and that he believed Hunt and Williams had committed this robbery while using the automobile. He said a third person was involved but he did not at that time know who the third person was. It later turned out, of course, that Starr himself was that third person. The questions and answers of Officer Cutler were used as preliminary statements to introduce his testimony about his investigation and his later encounter with Hunt and Williams. Defendant claims the trial court erred by permitting Officer Cutler to testify to these statements by Starr since they represented hearsay. The State contends these statements were not barred by the hearsay rule inasmuch as they are an exception pursuant to this Court's rulings in *Patterson v. State,* (1975) 263 Ind. 55, 324 N.E.2d 482, and *Underhill v. State,* (1981) Ind., 428 N.E.2d 759.

The State first contends that these statements were not offered for the truth of the facts asserted therein but merely to establish that the statements were made to the police officer and then to elicit from him testimony about the investigation that followed. Furthermore, the State's position is that pursuant to *Patterson, supra,* the statements were not barred. Starr had already testified as to all of these facts and implicated Hunt and Williams as accomplices in the robbery. Furthermore, he was in the local county jail available for cross-examination in regard to statements attributed to him by Cutler. Defendant concedes

the *Patterson* rule controls but urges us to reconsider it and find reversible error in its application here. There is no showing that the defendant was harmed by the testimony of Officer Cutler here. Cutler's testimony only prefaced the events leading to the identification and arrest of Williams and Hunt. Furthermore, as we stated previously, Starr had already testified and fully implicated Hunt and Williams in the robbery. We see no reversible error on this issue.

## X

Defendant claims the trial court erred in denying his motion *in limine* regarding use of certain information concerning the defendant's prior convictions for impeachment purposes. Defendant had made a *pro se in limine* motion to the trial court, claiming that documents illustrating his prior convictions were inaccurate and asking the court to grant a motion *in limine* regarding those documents. The trial court stated it could not grant the motion as the question would be whether or not matters in the document would refer to the defendant and whether it was in proper form to be admissible. The trial court also stated it could not rule on the documents until they were offered into evidence. In his motion to correct errors the defendant now claims the motion was improperly denied by the trial court because the State failed to complete its discovery obligations with regard to Kerry Williams' criminal record as well as that of Yuonniec Starr. Defendant has raised a different question on appeal than he did at the trial level. Grounds for objections in the trial court must be specific and any grounds not raised there are not available on appeal. *Brown v. State,* (1981) Ind., 417 N.E.2d 333, 337. The question which the defendant seeks to present to this Court on appeal must be the same as the question presented to the trial court. *Coffee v. State,* (1981) Ind., 426 N.E.2d 1318, 1319; *Little v. State,* (1980) Ind.App., 413 N.E.2d 639, 645. Accordingly, the defendant has waived this issue as he did not preserve it for review for this Court.

## XI

During the trial, a Marshall Hill was present, apparently as an alibi witness for the defendant. While other witnesses were being examined the State took a written statement from Hill. Defendant's counsel then asked the court for an order prohibiting the State from taking statements from defense witnesses and further orally moved for a motion *in limine* concerning the statement taken from Hill. The State contended that the statement was taken from Marshall Hill voluntarily without any coercion and that a copy had been furnished to defense counsel. The trial court asked counsel for both defendants if they knew of any law, either in code section or case law, on which they based their motion *in limine* and both of them said they did not but would research the issue. The trial court then said it was not aware of any such law and stated it would take the motion under advisement. The trial court invited them to furnish any authority that they found. The next day defendant Williams moved for mistrial on the grounds that the prosecutor had been intimidating his witnesses during the trial and no ruling had yet been made by the court. The trial court denied the motion.

■■■ Defendant now claims the trial court erred in such denial. The granting or denial of a motion for mistrial lies within the sound discretion of the trial court. *Scott v. State,* (1982) Ind., 434 N.E.2d 86. Furthermore, because of the nature of a declaration of a mistrial, such action is warranted only when less extreme action is wholly inadequate. *Gambill v. State,* (1982) Ind., 436 N.E.2d 301. There is no showing here that there was any intimidation of defense witnesses. The only thing before the trial court and before us on this appeal is the defendant's statement that such was the case. The record does not show that Hill testified nor that the jury was ever aware of his presence or of the incident of his giving a statement to the State. There was, therefore, nothing before the trial court on which to grant a motion for mistrial.

■■■ Defendant's other argument, that the State violated the separation of witnesses order, is also without merit. Admonishment given by the trial court in the separation order was ·the usual admonishment that the witnesses were not to discuss their testimony with any of the other witnesses in the case. This did not happen here. Hill had not testified in the cause and, in fact, never did testify. Furthermore, he did not talk to any other witnesses about their testimony but did give a statement to the State sometime before he was to be called. Defendant fails to give us any authority to show the impropriety of this act and we know of none. We accordingly find no error on this issue.

## XII

■■■ Defendant claims the trial court erred in denying his motion for continuance and motion for mistrial based on his contention that the State was withholding exculpatory evidence from him. It appears there was a reference in some of the witness' statements that they were at the Elkhart Police Station on the night of the robbery, November 16, 1979, had given some accounts of the robbery to the police, and had viewed a lineup containing Matt Washington, George Green, and a person known as "Bobby." Although it appears that there was a lineup on that night, there is no record in the police files regarding it. The police could not explain why no record was made of the event and had very little memory of any of the details of the incident. The fact is that immediately after the lineup all three of the suspects were released and were never considered suspects again. Defendant now contends that if he had all of the facts of the incident he might be able to attack the credibility of some of the witnesses. It is possible, he argues, there was a misidentification or that the witnesses made statements inconsistent with their present statements and testimony. Defense counsel admitted that the prosecuting attorney was unaware of this lineup until it had been brought to his attention during the trial. It is therefore clear the State did

not purposely attempt to withhold evidence or discovery from the defendant. It is further a fact that there is no demonstration that any exculpatory evidence existed that was being withheld from the defendants.

In *White v. State*, (1975) 263 Ind. 302, 330 N.E.2d 84, this Court held that a defendant must demonstrate that exculpatory evidence exists before he can succeed on appeal with an argument that he was denied access to exculpatory evidence. *Id.* at 304, 330 N.E.2d at 85. In *Swan v. State*, (1978) 268 Ind. 317, 375 N.E.2d 198, a witness testified he had been questioned by police three times. Swan then moved for dismissal or to strike all of the witness' testimony because the State had provided him with only one statement rather than three. The prosecuting attorney assured the court that he had only the one and he had furnished it to the defendant. This Court again held that the defendant's motion was correctly denied because he failed to establish that this evidence would have been exculpatory or that any other statements existed. *Id.* at 325, 375 N.E.2d at 203. Defendant does not show that any records exist that the State failed to furnish and, furthermore, does not show that if records had been made, they would have revealed exculpatory facts.

## XIII

 Finally, the defendant claims the trial court erred in denying his motion for a separate number of peremptory challenges from that of his co-defendant. The trial court denied this motion based on Ind.Code § 35–1–30–2 (Burns Repl.1979). This statute sets out the number of peremptory challenges for each party and further provides that when several defendants are tried together they must join in their challenges. This statute and its provisions has been upheld by this Court in *Morris v. State*, (1977) 266 Ind. 473, 364 N.E.2d 132, and *Swininger v. State*, (1976) 265 Ind. 136, 352 N.E.2d 473. Defendant now asks this Court to reconsider its position in the above decisions. We fail to see any reason for doing so. There is no showing in the record here that the defendant and his co-defendant exhausted the ten peremptory challenges they shared and thus they have not demonstrated prejudice because of the limitation. Defendant claims the limitation was more significant here because a motion for separate trials was denied. The record shows, however, that Williams did not move for a separate trial. Defendant Hunt had filed for a separate trial and this was denied by the trial court. There is no indication that Hunt's request for a separate trial was based in any way on the issue of peremptory challenges. Defendant therefore does not demonstrate any error in the court's ruling on this issue nor does he show that any prejudice resulted to him.

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.