Floyd SHELBY, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 1178S277.

Supreme Court of Indiana.

Dec. 11, 1981.

**1242**  ■

Barry L. Standley, Evansville, for appellant.

Theodore L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Floyd Shelby, Jr., was tried by jury and convicted of first degree murder in Vanderburgh Circuit Court on February 10, 1978. He was sentenced to life imprisonment on March 9, 1978. He appeals, alleging the court erred in the admission into evidence of his oral statement and a redacted written transcript of that statement, in not permitting a witness to answer a question and in overruling and denying a motion for change of venue from the county.

The evidence revealed that Floyd Shelby, Jr., conspired with Rosetta Wallace to murder her husband, Ben Wallace. Shelby hired Marvin Johnson to kill Wallace for two thousand dollars ($2,000). Payment was to be made when Rosetta Wallace received the proceeds from an insurance policy. On March 17, 1975, Shelby and Johnson went to a house where Ben Wallace was working. Shelby struck Wallace with a crowbar, and gave Johnson a .25 caliber automatic with which to kill him. The gun jammed when Johnson attempted to fire it and he returned it to Shelby who shot Wallace three times. Wallace died from those wounds.

I.

Appellant's first allegation of error concerns an oral statement given by him on October 7, 1977. Appellant was being held at the Vanderburgh County Jail on a charge of murder. Appellant Shelby had had an attorney appointed to represent him. Captain Richard Tenbarge of the Evansville Police Department was told that Shelby wished to talk with him. Detective Wingertner was dispatched to bring Shelby to Tenbarge's office at approximately 3:45 p. m. Tenbarge ascertained from Shelby that Mr. John Bunner was Shelby's attorney and that Shelby had not contacted Bunner before seeking to talk with Tenbarge.

Shelby made an oral statement which was video taped and casette tape recorded and later transcribed. The defendant contends that this statement was involuntary and thus inadmissible. He also claims that it was given as a result of improper promises which were made to induce a confession or admission from him.

The record reveals that Shelby contacted Tenbarge to make a statement and that he was given *Miranda* warnings. Shelby had an attorney and was given the opportunity to contact his attorney and was urged to do so. Tenbarge attempted to contact Bunner, appellant's attorney, but was unable to do so. Shelby continued to talk to Tenbarge. Appellant argues that because Captain Tenbarge tried unsuccessfully to reach the appellant's attorney, that he believed his attorney was not available. He claims also that because Captain Tenbarge told him that a copy of his statement would be delivered to the prosecutor's office and that he was sure his attorney would get a copy, that this lulled him into giving a statement. ■  The following exchange took place before the taking of a statement:

"Q. Do you want your lawyer present?
A. Well he's not available, I will go ahead and talk to you.
Q. Now, we, if you don't want to talk and you want to wait until that time, you can get your attorney here, we can hold this off until some

other date, would you rather do that?

A. I would rather go ahead and talk."

A defendant can waive his right to have an attorney present when making any statement to the police just as he can waive any other right. The record here shows an advisement of appellant's rights and an express statement that he would rather go ahead and talk without his attorney being present. The State has met its burden of showing that appellant's waiver of the presence of an attorney was intelligent and understanding. *Murphy v. State*, (1978) 267 Ind. 184, 369 N.E.2d 411, 415. *See Porter v. State*, (1979) Ind., 391 N.E.2d 801, 808.

■ Appellant also claims that he gave the statement in reliance on assurances by Captain Tenbarge that any statement would be used to help him and not be used against him. The record reflects that the defendant testified that it was his impression that the statement would not be used against him. However, he also testified that his rights were read to him and that Captain Tenbarge told him before he took the statement that anything he said would be used against him. Appellant also testified that before he gave the statement his rights were read to him and he signed a waiver form. This form included the statement that "Anything you say can and will be used against you in a court of law." Record at 1213. There is no contention that threats, violence, promises or other improper influence was used against Shelby either to obtain his statement or to secure his waiver of his rights. The court here properly denied Shelby's Motion to Suppress and allowed the redacted statement to be read to the jury. *Ortiz v. State*, (1976) 265 Ind. 549, 356 N.E.2d 1188. *See also Porter v. State*, (1979) Ind., 391 N.E.2d 801.

## II.

Appellant next claims that the trial court erred in sustaining the objection of the State and not permitting Virginia Shelby to testify as to whether her son, the appellant, could understand a waiver of rights form which had been read to him. The form was an Evansville Police Dept. Statement of Miranda Rights and a Waiver of those rights which Floyd Shelby, Jr., had signed. Prior to this question, Mrs. Shelby had testified that she helped her son with his homework in school, read letters to him from the Veterans Administration, and had advised him on how to answer them. She had testified that he did not read well and that he was "slow catching on." She said he did not understand large words and that his pronunciation is poor. Objection was made that any answer she would make to the question of whether or not Floyd Shelby understood the form would be speculative and would call for a conclusion. The court sustained the objection and did not allow Virginia Shelby to answer the question.

■ More precisely, it appears that the situation here was one in which a layman was asked to give an opinion on an issue of ultimate fact which was to be determined by the trier of fact—whether or not Floyd Shelby understood the form and had made a valid waiver. The old rule that a witness may not give an opinion of an ultimate fact question has been abrogated in this State, *Coonan v. State*, (1978) 269 Ind. 578, 382 N.E.2d 157; *Woods v. State*, (1978) 267 Ind. 581, 372 N.E.2d 178; *Rieth-Riley Construction Company, Inc. v. McCarrell*, (1975) 163 Ind.App. 613, 325 N.E.2d 844. However, these cases presented issues in which a trial court had allowed such questions to be answered and no error was found. This area is within the discretion of the trial court and this Court will review such an exercise in judicial discretion only for an abuse thereof. There is no error *per se* when a trial court does not allow an answer to such a question. The issue here, of whether Floyd Shelby understood the rights form was to be determined by the trier of fact. Mrs. Shelby was permitted to testify concerning his education and reading ability and it was not error to refuse to permit her to testify as to her conclusions as to whether he understood the waiver of rights form.

## III.

■ Appellant finally argues that the court erred in denying his motion for a

change of venue from the county. Shelby claims that there was prejudice in the county against him resulting from news media coverage of the trial of Rosetta Wallace. Rosetta Wallace had been tried approximately two months before the appellant. Seven newspaper clippings were attached to appellant's Motion for Change of Venue to demonstrate such prejudice. These clippings were newspaper coverage of the Rosetta Wallace trial and were dated from December 7 to December 13, 1977. Appellant has not shown how any juror was prejudiced, but merely argues that they would have been because of the proximity of the Rosetta Wallace trial to his trial.

▬ The appellant accepted the jury at the close of *voir dire* and had four peremptory challenges left when he accepted the jury. Some challenges for cause by Shelby were overruled; however, we have held that, "A trial court's overruling of challenges for cause is harmless error, if error at all, when the defendant does not exhaust his peremptory challenges." *McFarland v. State,* (1975) 263 Ind. 657, 336 N.E.2d 824.

Judgment affirmed.

GIVAN, C. J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.