**Norman ASKEW, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 981S232.

Supreme Court of Indiana.

Oct. 4, 1982.

William F. Wurster, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Judge.

Appellant was charged with the crime of Murder. He was found guilty by a jury and sentenced to a forty (40) year term of imprisonment.

The decedent, Paul Sargeant, lived with his grandmother, one Anna English, in an apartment in Indianapolis. She testified the decedent was part of a narcotics distribution operation headed by appellant. On May 27, 1980, appellant visited Mrs. English's apartment looking for the decedent, who was not there at the time. Mrs. English stated appellant said he was going to kill the decedent over "his money," which she assumed meant money the decedent owed appellant as a result of some narcotics transactions. When the decedent arrived at the apartment Mrs. English told him of appellant's threat.

State's witness Serena Bell testified that approximately 8:00 A.M. the next day the decedent was walking down the street in the apartment complex when a green car began following him slowly. The driver of the car pointed a shotgun out the window and shot the decedent in the lower left side of the chest. The witness positively identified appellant as the man who shot the decedent. Bell had also viewed police photographic displays shown to her after the crime occurred. From these displays she had selected two photographs of appellant as the murderer.

State's witness James Jones testified that before 8:00 A.M. on the morning of the crime, he loaned his car, a 1970 Buick Electra 225, to appellant's girlfriend. About 11:30 that morning she called Jones and told him she had wrecked his car and would see that it was repaired. The next day appellant, appellant's girlfriend and a third

party took Jones to a house to see his car. He testified it was by that time partially painted with gray primer paint. He also testified though the others tried to show him a spot on the fender where the car had allegedly been dented and already straightened out, he was unable to discern that it had ever been damaged there at all. He got the car back about a week later, by which time the body had been painted black.

State's witness Tony Boyce, who was visiting a friend in the apartments at the time of the shooting, testified he saw a green Buick Electra 225 speeding away from the complex immediately after he heard a shot or shots fired. Witness Bell was unable to offer any testimony about the car other than that it was green.

Appellant claims the verdict is contrary to law and that the evidence is insufficient to support the verdict of the jury. We treat the two allegations of error as one, as they involve essentially the same questions.

█ We do not reweigh the evidence nor judge the credibility of witnesses. *Bond v. State,* (1980) Ind., 403 N.E.2d 812.

The elements of murder in Indiana are that (1) the defendant (2) knowingly or intentionally (3) killed (4) another human being. I.C. § 35–42–1–1 [Burns 1979 Repl.].

█ In the case at bar the presence of each of these elements is supported by sufficient evidence of probative value such that the conviction can be sustained. The eyewitness testimony of Serena Bell is sufficient to satisfy the element that appellant was the perpetrator of the offense. Appellant claims this testimony is suspect because it was contradicted by that of Detective Robert Green, an Indianapolis police officer, who investigated the crime. Green testified that during his investigation of the crime he received information from one Eddie Brown, who did not appear as a witness, that there was another passenger, a female, in the car with appellant when the crime occurred. However, such evidence no more than makes possible an inference that there was another person in the car who could

have committed the murder. Reaching alternative inferences such as this is a function of the trier of fact, not this Court. *Cole v. State,* (1980) Ind., 403 N.E.2d 337; *Stallings v. State,* (1970) 255 Ind. 365, 264 N.E.2d 618. We cannot reverse the conviction merely because this inference is a plausible one that might have been drawn from the evidence.

█ As to the *mens rea,* we have held the intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Fryback v. State,* (1980) Ind., 400 N.E.2d 1128; *Chambers v. State,* (1979) Ind., 392 N.E.2d 1156. In the case at bar the evidence most favorable to the State shows appellant fired a sawed-off shotgun at close range into the decedent's chest. We hold this evidence supports the finding of the trial court as to the element of intent.

That the decedent, a human being, died as a result of the wounds inflicted upon him is shown by the testimony of the pathologist, Dr. Benz, who performed the autopsy on the victim's body.

We hold the evidence is sufficient to support the finding of the presence of all the elements of the offense beyond a reasonable doubt.

Appellant claims the trial court erred in overruling his Motion for Discharge. On appeal he claims discharge was proper because the information on which the charge was based failed to state that the victim, Paul Sargeant, was a human being.

█ It is true, of course, the murder statute, I.C. § 35–42–1–1 [Burns 1979 Repl.], applies only to the killing of human beings. Also, appellant correctly points out the indictment or information must state the crime in the words of the statute or words that convey a similar meaning. *Carson v. State,* (1979) Ind., 391 N.E.2d 600; *Heflin v. State,* (1977) 267 Ind. 427, 370 N.E.2d 895. Nevertheless, this Court has held since 1878 that an indictment for murder that names the victim need not further state the victim is a human being. *See, e.g., Roberts v. State,* (1978) 268 Ind. 348, 375 N.E.2d 215; *Merrick v. State,* (1878) 63

Ind. 327. We hold there is no merit to this argument.

Appellant claims the trial court erred in admitting State's Exhibits Eleven and Twelve into evidence. The record reflects State's Exhibit Ten, an autopsy photograph of the decedent, showing the shotgun pellet wounds to his chest had already been admitted into evidence without objection. Exhibit Eleven shows the face and shoulders of decedent. Some of the pellet wounds are visible at the bottom of the photograph. Exhibit Twelve is a photograph of the entire body of the decedent as it lay on a metal table in the laboratory. A chest X-ray was hung on a viewing screen in the background of this photograph.

Appellant concedes admission of Exhibit Ten was proper, as it tended to support or explain the testimony of a witness and depicted that which the witness would be permitted to describe. *See, e.g., Propes v. State,* (1978) 269 Ind. 626, 382 N.E.2d 910. However, he argues Exhibits Eleven and Twelve should not have been admitted because they were cumulative and served no purpose other than to inflame the passions of the jury. He cites *Hoover v. State,* (1978) 268 Ind. 566, 376 N.E.2d 1152.

The key test with respect to such photographs is that of relevancy; that is, do the photographs depict objects or scenes which a witness would be permitted to describe. *Moore v. State,* (1981) Ind., 414 N.E.2d 558; *Drollinger v. State,* (1980) Ind., 408 N.E.2d 1228; *Porter v. State,* (1979) Ind., 391 N.E.2d 801. The fact a photograph might arouse the jury's passions due to its gruesomeness is not sufficient grounds for excluding it from evidence if it is material and relevant. *Drollinger, supra; Porter, supra.* Only if there is a clear showing of imbalance between relevancy on the one hand and tendency to inflame the passions of the jury due to gruesomeness on the other hand is the trial court guilty of an abuse of discretion in admitting the photograph into evidence. *Graves v. State,* (1980) Ind., 400 N.E.2d 139; *Brandon v. State,* (1978) 268 Ind. 150, 374 N.E.2d 504.

Clearly the test of relevancy of the photographs is met in the case at bar. They depict that which a witness would be permitted to describe, namely, the nature and extent of the wounds, to explain the fact and cause of death and identify the victim. We also fail to see how appellant was prejudiced or harmed by the fact the chest X-ray in the background of Exhibit Twelve was not shown to be an X-ray of the decedent's chest. We hold the trial court did not err in admitting State's Exhibits Eleven and Twelve into evidence.

Appellant claims the trial court erred in refusing to give an instruction he allegedly tendered regarding voluntary manslaughter as a lesser included offense of murder.

The State calls our attention to I.C. § 35–1–35–1 [Burns 1979 Repl.] in response to appellant's allegation of error. That statute provides in relevant part:

"Sixth. If the prosecuting attorney, the defendant or his counsel desire special instructions to be given to the jury, such instructions shall be reduced to writing, *numbered and signed* by the party or his attorney asking them ...." (Emphasis added.)

In the case at bar the tendered instruction is neither numbered nor signed. Relying on that part of the statute quoted above, the State argues no claim of error can thus be predicated by appellant on failure to give this instruction because of his failure to sign or number the instruction.

We must agree with the State on this issue. The last reported case in which we can find this Court held an appellant could not predicate error on refusal to give an instruction on the grounds the instruction was not signed is *Wiley v. State,* (1929) 200 Ind. 572, 165 N.E. 313. At that time, § 2301, subd. 6, Burns 1926 set forth the requirement instructions be written and signed to be properly requested. Despite the fact we thus rely on precedent over fifty years old, we see no reason to overrule the precedent and ignore the plain language of I.C. § 35–1–35–1. We hold appellant has waived any claim of error with regard to

refusal of the instruction because it is neither numbered nor signed.

However, we find that even had the instruction been properly numbered and signed, the trial court could have properly refused it. The instruction is captioned "VOLUNTARY MANSLAUGHTER" and reads as follows:

"The crime of voluntary manslaughter is defined by statute as follows:

A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony.

The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under ... this chapter to voluntary manslaughter.

To convict the Defendant of voluntary manslaughter the State must have proved each of the following elements:

1. knowingly or intentionally

2. killing

3. another human being; is murder; but

4. if committed while under a sudden heat it is voluntary manslaughter, a Class B felony. However, the State need not prove the existence of sudden heat because it is a mitigating factor only.

If the State failed to prove each of these elements beyond a reasonable doubt the Defendant should be found not guilty.

If the State did prove each of the elements beyond a reasonable doubt, then you should find the Defendant guilty of manslaughter, a Class B felony."

It is well-settled it is not error to refuse an instruction which would tend to mislead or confuse the jury. *Smith v. State,* (1981) Ind., 422 N.E.2d 1179. Likewise, an instruction should not be given if it incorrectly states the law. *Battle v. State,* (1981) Ind., 415 N.E.2d 39; *Faught v. State,* (1979) Ind., 390 N.E.2d 1011. For reasons we shall explain, we think this instruction runs afoul of these rules.

Voluntary manslaughter is defined by I.C. § 35–42–1–3 [Burns 1979 Repl.], which reads:

"*Voluntary Manslaughter.*—(a) A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a class B felony.

"(b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) [35–42–1–1(1)] of this chapter to voluntary manslaughter."

It is not the State's burden to prove the existence of the mitigating factor, presence of sudden heat, in order to reduce murder to voluntary manslaughter; rather, it is the defendant's burden to do so. *Russell v. State,* (1981) Ind., 419 N.E.2d 973.

The instruction allegedly requested by appellant, however, incorrectly states the law and could have mislead the jury by leading them to believe it is the State's burden to prove the existence of sudden heat as an element of voluntary manslaughter. The instruction's recitation, "To convict the Defendant of voluntary manslaughter the State must have proved *each of the following elements* ... ," followed by four numbered items, the last of which is a reference to sudden heat, may well have led the jury to erroneously believe the existence of sudden heat is an element of voluntary manslaughter the State must prove. Though the last sentence of item number four then correctly points out the State need not prove the existence of sudden heat, the apparent conflict in the way the instruction is drafted creates the potential for confusion that would require the instruction not be given. The last sentence in the instruction, which again *tends to lead* the jury to believe the State must prove the existence of sudden heat to convict the defendant of voluntary manslaughter, provides more potential for confusion on this point. Thus, we conclude the instruction might have confused the jury and also misstates the law. Therefore, there would have been no error in refusing to give the

instruction even had it been submitted with formalities properly observed.

The trial court is in all things affirmed.

All Justices concur.