Delores BROWN, Appellant,

v.

STATE of Indiana, Appellee.

No. 982S369.

Supreme Court of Indiana.

April 27, 1983.

Thomas M. Leatherman, Mehl, Mehl, Beeson & Leatherman, Goshen, for appellant.

Linley E. Pearson, Atty. Gen., Cynthia Sue Stanley, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was charged by way of information with two counts of Felony Murder by Arson. She was tried before a jury and found guilty on both counts. She was sentenced to concurrent terms of imprisonment of thirty (30) years upon each conviction.

The facts are as follows. Appellant lived with her mother, her infant child and her two brothers, James and Bruce, in a two story frame house in Elkhart. In the fall of 1980 she was a tenth grade student in Elkhart Central High School. During this period of time appellant and her mother were frequently at odds over such matters as her attendance and performance at school and her relationship with her current boyfriend.

On September 2, 1980, appellant went to school in the morning with her brother James but left school without permission at about 11:00 A.M. She returned home about 5:00 P.M. and was confronted by her mother about her absence from school. Appellant had already made plans to run away from home with her child and her boyfriend. The three were going to go to Pontiac, Michigan, where the boyfriend had a job and an apartment. That evening appellant packed most of her and the baby's belongings in suitcases and hid them in her room.

Sometime after 10:00 P.M. that evening, after the rest of the family had gone to bed, appellant went to the garage and retrieved a metal can at least partially filled with gasoline. She either intentionally poured or accidentally spilled some gasoline on the living room carpet. She attempted to wipe up the gasoline with a pair of socks. Then she struck a match and put it to the spot where the gasoline had been spilled. When the fire quickly grew out of proportion to her expectations she tried unsuccessfully to smother it with a blanket. She ran upstairs and tried to awaken her brothers to tell them there was a fire downstairs but was also unsuccessful in this effort. Both boys ultimately died as a result of the fire.

After trying to roust her brothers, appellant took her suitcases and her child and exited the house through a bathroom win-

dow. Her mother also escaped the fire. A policeman cruising the neighborhood early in the morning of September 3 found the suitcases under some shrubs near the home. Other containers packed with the child's clothing were found in the back seat of appellant's mother's car.

While the fire was being fought, appellant went to the home of an aunt and uncle who lived nearby. At around 2:30 A.M. she and her mother went to the Elkhart police station and were questioned about the fire. Eventually appellant confessed in two separate statements that she started the fire. Both confessions were suppressed by the trial judge.

Appellant claims the trial court erred in permitting State's witness Delbert Thornburg to testify in the State's case in chief.

Following appellant's confession and detention, the State undertook to proceed under I.C. § 31–6–2–4 [Burns 1980 Repl.] to have appellant waived from juvenile court to circuit court where she could be charged with felony murder and tried there as an adult. The required waiver hearing resulted in waiver of appellant into Elkhart Circuit Court.

Thornburg was hired by the attorney who was appointed to represent appellant in the juvenile court proceedings. Thornburg, a licensed polygraph examiner, administered a polygraph examination to appellant on September 24, 1980. During that examination appellant related to Thornburg, in response to his questions, that she started the fire in the manner described in the recitation of facts, that she only intended to burn a small hole in the carpet to let her mother know how unhappy she was with her, and that she did not intend to burn down the house or damage it extensively or harm her brothers. At the waiver hearing in juvenile court Thornburg testified on behalf of appellant as to his administration of the polygraph examination and as to his assessment of the truth of appellant's statements about her intentions on the night of the fire.

At the trial in criminal court the State called Thornburg as a witness. He was asked to relate to the jury the substance of his conversation with appellant, that is, to relate to the jury the questions he asked her and the answers she gave. He was not allowed to state that these communications took place pursuant to the administration of a polygraph examination.

Appellant contends the admission of this testimony is reversible error. First, she argues the admission of this testimony constituted admission of a communication between a client and the agent of an attorney that was protected by the attorney-client privilege. She claims such privilege was not waived by the client. Alternatively she argues the communication was protected from disclosure by the work product doctrine as developed in *Hickman v. Taylor,* (1947) 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451.

The State responds with several arguments, however, we will consider only one, that by having Thornburg testify at the waiver hearing in the juvenile court appellant waived any protection afforded to the communications between Thornburg and her under either the work product or attorney-client privilege theories.

The attorney-client privilege has been recognized in this State since 1840. In *Jenkinson v. State,* (1840) 5 Blackf. 465, 466–67, this Court stated:

"The policy of the law requires, that when an attorney is consulted on business within the scope of his profession, the communication on the subject between him and his client should be treated as strictly confidential. It is not material, whether the evidence relate to what was said by the attorney, or what was said by the client, in their private conversation on the business in which the attorney was professionally employed. The statements of each to the other, in such cases, must be considered as privileged communications; and the attorney should neither be required nor permitted, by any judicial tribunal, to divulge them against his client, if the latter object to the evidence."

This Court continues to recognize the attorney-client privilege as it relates to communications between the client and his attorney, for the purpose of obtaining advice and aid upon the subject of the client's rights and liabilities. *See, Colman v. Heidenreich,* (1978) 269 Ind. 419, 381 N.E.2d 866. We identified the purpose of the privilege in *Colman, supra,* as follows:

"It makes provision for a person to give complete and confidential information to an attorney, so that the attorney may be fully advised in his revises to the client. At the same time, it assures the client that these confidences will not be violated." *Id.* at 422, 381 N.E.2d at 868.

The attorney-client privilege has been recognized by statute in Indiana as well. *See,* I.C. § 34-1-14-5 [Burns 1973]; I.C. § 34-1-60-4 [Burns 1973]. *See also, The Code of Professional Responsibility* and the *Ethical Considerations and Disciplinary Rules* promulgated thereunder.

The attorney-client privilege is recognized as attaching to communications between the agent of an attorney and the client, provided the communication is made to the agent upon the same subject matter about which the attorney was consulted and the agent was retained by the attorney for the purpose of assisting him and rendering legal advice to or conducting litigation on behalf of the client. *See,* 81 Am.Jur.2d *Witnesses* §§ 217, 218 (1976); 97 C.J.S. *Witnesses* § 276(c)(2) (1957); 2 P. Herrick *Underhill's Criminal Evidence* § 329 (5th ed. 1956).

■ Given these principles and the state of the record in this case, we have no difficulty in finding the attorney-client privilege attached to the communications between appellant and Thornburg at the time they took place. The record shows an attorney-client relationship between appellant and the attorney, that the attorney employed Thornburg as his agent for the purpose of assisting him in rendering legal advice to appellant, that the communications between appellant and Thornburg took place while the latter was acting as the attorney's agent, and that the communications related to the same subject matter about which the attorney was consulted.

■ The State cites the case of *United States v. Nobles,* (1975) 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141, in support of the argument Thornburg's act of testifying at the waiver hearing in juvenile court is a waiver of the privilege. In that case an investigator hired by the defendant's attorney had made a written report to the attorney summarizing statements made to him during pretrial interviews of certain prosecution witnesses. After these witnesses had testified for the prosecution and had given testimony contrary to their pretrial statements to the investigator the defendant called the investigator as a defense witness for the purpose of impeaching the government's witnesses by having him testify about the statements. When the defendant refused to let the prosecutor inspect the investigator's report for the prosecutor's own use in cross-examination, arguing the work product doctrine protected the report from disclosure to the government, the trial court ruled the investigator could not testify at all about the statements of the witnesses. The Supreme Court reversed holding, *inter alia,* that "electing to present the investigator as a witness waived the privilege with respect to matters covered in his testimony." *Id.* at 239, 95 S.Ct. at 2170-71, 45 L.Ed.2d at 141.

We agree with the State's argument that *Nobles, supra,* is applicable in the case at bar.

■ The case of *Simmons v. United States,* (1966) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, cited by appellant is not persuasive. In that case the Supreme Court held, "[W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Id.* at 394, 88 S.Ct. at 976, 19 L.Ed.2d at 1259. The Court in that case stated it would be "intolerable that one constitutional right should have to be surrendered in order to assert another." *Id.*

Appellant argues the holding and reasoning of the *Simmons* case are applicable in the case at bar. She urges that the act of calling Thornburg as a witness at the waiver hearing in juvenile court is not a waiver of any attorney-client privilege attached to her communications with him. She argues that forcing her to give up the right to resist waiver out of the juvenile system, in order to exercise the right to resist disclosure of the privileged communication, is unconstitutional.

We disagree. The result we reach merely means appellant cannot seek admission of privileged communications about a subject at one time and then later resist disclosure of the same communications. She cannot waive the protection of the attorney-client privilege when it suits her immediate purpose to do so, then assert the privilege later when testimony about the same communications is sought by the State. We hold appellant waived the protection of the attorney-client privilege afforded to the communications between her attorney's agent and her by allowing the agent to testify at the waiver hearing about those communications.

Appellant contends the trial court erred in keeping from the jury the fact that appellant's statements to Thornburg were made while she was taking a polygraph examination.

■ Even the mere mention of the fact that a defendant or a witness took a polygraph examination is error, absent a stipulation by both parties that the results of such a test shall be admissible. *Swan v. State,* (1978) 268 Ind. 317, 375 N.E.2d 198. There was no error in excluding such evidence.

Appellant claims the trial court erred in denying her Motion to Dismiss the information.

■ Appellant contends the information was filed on the basis of an unconstitutional statute, I.C. § 35–42–1–1(2) [Burns 1979 Repl.]. This is that part of the statute that defines "felony murder." Appellant contends that part of the statute is unconstitu-

tional because it dispenses with the need to prove a specific intent to kill. This Court has held the intent to kill is not an element of felony murder. *Pawloski v. State,* (1978) 269 Ind. 350, 380 N.E.2d 1230; *Cade v. State,* (1976) 264 Ind. 569, 348 N.E.2d 394. The only intent required to be proven in a prosecution for felony murder is the intent to commit the underlying felony. *Pruett v. State,* (1968) 250 Ind. 359, 234 N.E.2d 501. *See also,* 40 Am.Jur.2d *Homicide* § 46 (1968).

■ Appellant cites no authority for the proposition that because, under the felony murder theory, there is no need to prove a specific intent to kill, the statute is unconstitutional. A felony murder statute similar to our own was upheld against a variety of constitutional attacks in *People of Territory of Guam v. Root* (9th Cir.1975), 524 F.2d 195. Other state court decisions have upheld the constitutionality of the felony murder statutes in force in those jurisdictions. *See, e.g., People v. Johnson,* (1974) 38 Cal.App.3d 1, 112 Cal.Rptr. 834; *Larkin v. State,* (1981) 247 Ga. 586, 278 S.E.2d 365; *State v. Grooms,* (1980) 47 Or.App. 1001, 615 P.2d 1130. In a Michigan case cited by appellant in which the Supreme Court of Michigan held malice is a required element of any murder, including felony murder, and that malice could not be inferred from the intent to commit the underlying felony, no constitutional impediment to the felony murder theory was identified. *See, People v. Aaron,* (1980) 409 Mich. 672, 299 N.W.2d 304. In our own recently decided case of *Head v. State,* (1982) Ind., 443 N.E.2d 44, a majority of this Court, though holding there is no such crime as "attempted felony murder," did not in any way suggest the felony murder statute itself is unconstitutional. We conclude the trial court did not err in denying appellant's Motion to Dismiss as premised on the unconstitutionality of the felony murder statute.

■ Appellant claims the trial court erred in denying her Motion to Dismiss as premised on the alternative grounds that she was entitled to discharge due to non-compliance with I.C. § 31–6–7–6 [Burns

1980 Repl.]. That statute sets out procedures to be followed after a juvenile is taken into custody for the suspected commission of an act of delinquency. In relevant part the statute provides:

"Speedy trial.—(a) If the child is in detention, a petition alleging delinquency must be filed within seven [7] days (excluding Saturdays, Sundays, and legal holidays) after he is taken into custody. (b) If the child is in detention and a petition has been filed, either a fact-finding hearing or a waiver hearing must be commenced within twenty [20] days (excluding Saturdays, Sundays, and legal holidays) after the petition is filed." *Id.*

The record shows appellant was taken into custody on September 3, 1980. A petition alleging delinquency was filed on September 9. The hearing on waiver into Elkhart Circuit Court was not held until October 28 and 30. The delay between September 9 and October 28 was thirty-five [35] days in length, excluding Saturdays and Sundays. Appellant contends she was entitled to dismissal of the charges for this failure to adhere to the time limit set forth in I.C. § 31–6–7–6(b).

The issue is resolved by looking to another part of the statute. In I.C. § 31–6–7–6(g) we find:

"(g) If the child is in detention and the times in subsections (a), (b), and (c) are not followed, he shall be released on his own recognizance or to his parents, guardian, or custodian."

The subsection of the statute makes it clear that failure to hold the waiver hearing within twenty [20] days of the filing of the petition alleging delinquency entitles the juvenile to no more than release on his own recognizance or to his parents, guardian, or custodian. We see nothing in any other part of the statute that can be read to entitle the juvenile to outright dismissal of the charges or to cause the juvenile court to lose jurisdiction when the time limits in I.C. § 31–6–7–6(b) are not met. There was no error in denying appellant's Motion to Dismiss insofar as such motion was premised on violation of I.C. § 31–6–7–6(b).

Appellant claims the trial court erred in denying her request to replace Juror No. 10 with the alternate juror. The record reflects that on the morning of September 23, 1981, before trial proceedings commenced the judge held a conference on the record with counsel. The judge informed counsel that a newspaper reporter had informed him that Juror No. 10 had commented to the rest of the panel that appellant had set the fires to get even with her older brother for fathering her child. The newspaper reporter, the judge stated, told him he got this information not from Juror No. 10 herself but from a relative of that juror. The judge proceeded to question each juror individually and out of the presence of the others as to whether they had heard any discussion of the facts of the case from any other members of the panel. All responded that they had heard no such discussion. Juror No. 10 was questioned more extensively and admitted to no more than that she had read of the case in the newspapers and that she told some of the members of the panel that she did not recall the report of the incident in the media.

The decision to replace the regular juror with the alternate juror is left to the discretion of the trial judge and is reversible error only for an abuse of that discretion. *Landers v. State,* (1975) 165 Ind.App. 221, 331 N.E.2d 770. Given the results of the trial court's examination of the jurors on an individual basis there was no abuse of discretion in refusing to replace Juror No. 10 with the alternate juror.

Likewise, there was no error in denying appellant's Motion for a Continuance, made following the examination of the jurors as described above, on the grounds appellant's counsel needed more time to investigate the alleged misconduct of Juror No. 10. A trial court's ruling on a non-statutory motion for a continuance lies within the trial court's sound discretion and is reversible error only when that discretion is abused. *Downer v. State,* (1982) Ind., 429 N.E.2d 953; *Aron v. State,* (1979) Ind., 393 N.E.2d 157. *See also,* Ind.R.Tr.P. 53.4. To

show abuse of that discretion the appellant must show prejudice resulting from denial of the motion. *Downer, supra; Aron, supra.* The trial court's examination of each juror individually led to no possible conclusion other than that the alleged misconduct never in fact occurred. Against this evidence and inferences that the judge might draw from his examination of the jurors he had only a double hearsay report that the misconduct had in fact occurred. In light of this state of facts we see no prejudice to appellant in denying a continuance for the purpose of further investigating the matter of juror misconduct.

■ Appellant claims the trial court erred in admitting over her objection a statement by witness Richard Wright. Wright was an Elkhart fireman who was riding on the first fire truck to arrive at the home on the night of the fire. He was also the first fireman to attempt to enter the burning home. When asked by the prosecutor whether, in his opinion, the conditions then existing were dangerous to human life, he responded affirmatively. Appellant objects to the admission of this evidence on the grounds it was improper admission of opinion evidence.

The testimony of a witness as to his opinion on an issue of ultimate fact is sometimes admissible. *Shelby v. State,* (1982) Ind., 428 N.E.2d 1241; *Woods v. State,* (1978) 267 Ind. 581, 372 N.E.2d 178. We have treated "opinion statements" as to the elements of an offense as such evidence. *See, Woods, supra.* Among the elements of arson is the intentional or knowing damage by fire of the property of another "under circumstances that endanger human life." I.C. § 35–43–1–1(a)(2) [Burns 1979 repl.]. Thus the testimony of a witness in an arson case that a fire that is the subject of the charge was set under circumstances that endanger human life is admissible as opinion evidence of an issue of ultimate fact. There was no error in admitting this testimony.

Appellant claims the trial court erred in admitting over her objection State's Exhibits 6, 7, 8, 31, 32 and 34. Exhibits 6, 7 and 8

are photographs of the body of James Brown taken from different distances and angles as it lay on the floor of his bedroom. Exhibits 31 and 32 are photographs of James Brown's body as it lay on the autopsy table. Exhibit 34 is a photograph of the body of Bruce Brown as it lay on the autopsy table.

Appellant's objection to the admission of State's Exhibits 6, 7 and 8 is on the grounds their admission served no purpose other than to prejudice the jury against appellant. Moreover, appellant argues, she was willing to stipulate as to the cause of death of James Brown and, therefore, it was error to admit the exhibits on the theory they were relevant to the issue of the cause of death of James Brown.

■ The admissibility of the photographs of the body of the victim of a homicide, as with the admissibility of any photograph, turns on the question of its relevancy. *Askew v. State,* (1982) Ind., 439 N.E.2d 1350; *Moore v. State,* (1981) Ind., 414 N.E.2d 558; *Drollinger v. State,* (1980) Ind., 408 N.E.2d 1228. Photographs are relevant if they depict objects or scenes that a witness would be permitted to describe verbally. *Id.* If the photograph is relevant, then only if its tendency to inflame the passions of the jury due to its gruesomeness clearly outweighs its relevancy is it reversible error to admit it into evidence. *Askew, supra; Graves v. State,* (1980) Ind., 400 N.E.2d 139; *Brandon v. State,* (1978) 268 Ind. 150, 374 N.E.2d 504.

■ Because appellant was willing to stipulate to the cause of death of James Brown, it does not follow the admission of the exhibits was error. In 26 I.L.E. *Stipulations* § 1 at 383 (1960) we find stipulation defined as "an agreement between counsel with respect to business before a court." The use of the word "agreement" in the definition of stipulation makes it apparent one party's willingness to enter into a stipulation has no significance unless the other party is also willing to enter the stipulation. *See also,* 83 C.J.S. *Stipulations* § 3 (1953).

As to State's Exhibits 31, 32 and 34, appellant asserts their admission was erroneous because they depict the body of one of the victims in an "altered state."

There is no basis for holding the trial court erred in admitting into evidence State's Exhibits 31 and 32. The body had not been altered when those two photographs were taken.

As to State's Exhibit 34, this photograph of the body of Bruce Brown was taken, according to the doctor who performed the autopsy and testified at trial, "during" the autopsy. The doctor also testified that, for unexplained reasons, he did not receive Bruce Brown's body at the hospital until after it had been embalmed. As part of the embalming process, the body had been sprinkled with a white powder, which the pathologist testified was washed off before performing the autopsy. Either all of the powder or a residue of what was left after the body was washed is visible in the photograph.

In a sense it is thus true that State's Exhibit 34 is a photograph of a body in an altered state. However, in *Loy v. State,* (1982) Ind., 436 N.E.2d 1125, it is apparent that the particular features of such photographs that makes them objectionable are the cuts, incisions, and other scars left on the body after the autopsy is performed. "Such a display may impute the handiwork of the physician to the accused assailant and thereby render the defendant responsible in the minds of the jurors for the cuts, incisions, and indignity of an autopsy." *Id.* 436 N.E.2d at 1128.

In the case at bar, however, such features are not present. No incisions had yet been made on the body as part of the autopsy process, nor was the photograph an "action shot" taken during the autopsy, as were several of the photographs in *Kiefer v. State,* (1958) 239 Ind. 103, 153 N.E.2d 899. There was no error in admitting State's Exhibit 34 into evidence.

Appellant claims the trial court erred in admitting State's Exhibit 25 into evidence over her objection. This exhibit is the coroner's death certificate of James Brown and was authenticated during the taking of testimony from Elkhart County Coroner Marvin Riegsecker. Riegsecker testified he went to the Brown residence at about 11:30 P.M. on September 2, examined the body of James Brown, concluded he died from the fire at the home, and ordered an autopsy performed on the body. On the death certificate, however, Riegsecker entered on the line marked "Describe How Injury Occurred" the statement "House fire started by arsonist." Appellant objects to the admission of the certificate because of the nature of this entry. She claims the admission of the exhibit allows into evidence a legal conclusion made by one not qualified to draw such a conclusion.

Questions of law in criminal cases are not a proper subject of testimony by a witness. *Ledcke v. State,* (1973) 260 Ind. 382, 296 N.E.2d 412. *See also,* 23 C.J.S. *Criminal Law* § 872 (1961); 32 C.J.S. *Evidence* § 453 (1964). Testimony that an act of arson occurred, which is exactly what happened when State's Exhibit 25 with the aforementioned entry was admitted into evidence, should thus not be heard. This is a legal conclusion and as such is one reserved exclusively for the jury to draw from the facts. Witness Riegsecker was entitled to state the decedent died as a result of a house fire. He was also entitled to make whatever entries he chose on the coroner's death certificate. But once his legal conclusion an act of arson occurred had been entered on the certificate, the certificate became inadmissible unless the reference to arson was deleted.

However, in light of the quantum of other evidence that the fire was not an accident but rather was caused by the lighting of gasoline spilled onto the living room carpet, we do not see prejudice to appellant in the erroneous admission of the death certificate. Only where an error has caused prejudice to a defendant is there cause to reverse a conviction. *Smith v. State,* (1982) Ind., 432 N.E.2d 1363. We hold the error committed in this regard was harmless.

Appellant claims the trial court erred in granting the State's Motion in Limine to have the trial court bar the testimony of defense witness Michael Oyer. At trial appellant made an offer of proof as to witness Oyer's testimony. The offer of proof showed the following: Oyer had administered psycho-educational tests to appellant pursuant to the order of the judge of the juvenile court. These tests showed appellant had an intelligence quotient or "I.Q." of 78. Appellant's counsel stated Oyer would testify this and other sub-test scores appellant earned placed her in the "borderline retarded" range with "serious deficits in the language/verbal area." Appellant offered such testimony on the theory it was relevant as to the kind of culpability with which she had been charged by the State. She was charged with having "knowingly" committed arson. "Knowingly" is defined in I.C. § 35–41–2–2(b) [Burns 1979 Repl.]. There it is stated: "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." It is appellant's theory that she was of such low mental capacity that she was unaware of a high probability that her intentional damage of the property of another would endanger human life. *See,* I.C. § 35–43–1–1(a) [Burns 1979 Repl.]. She claims the evidence should have been admitted because it was relevant to the question of whether she entertained the intent with which she was charged.

It is well settled, however, that low mental capacity is not a defense to a criminal charge. *Flowers v. State,* (1957) 236 Ind. 151, 139 N.E.2d 185. *See generally,* 21 Am.Jur.2d *Criminal Law* § 40 (1981). Appellant did not interpose an insanity defense. Evidence purporting to go to the actor's mental capacity was not a proper subject of expertise. It was rather a question of fact for the jury to resolve. *See, Simpson v. State,* (1978) 269 Ind. 495, 381 N.E.2d 1229. There was no error in not allowing witness Oyer to testify.

The trial court is in all things affirmed.

HUNTER, PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

I regard the trial court's action in restricting the defendant in her cross-examination of the prosecution witness, Thornburg, and in so doing bringing out before the jury the fact that the incriminating admissions attributed by the witness to her were made during the course of an actual polygraph examination as error.

As pointed out by the majority opinion, Thornburg was a polygraph operator and was permitted over objection by the defense to give defendant's incriminating answers to questions propounded to her by Thornburg during an actual lie detector test. Once those damaging admissions were before the jury as the trier of fact, the rule excluding evidence of polygraph examination had to give way so far as would be necessary to permit the accused an opportunity to exercise her right to full and fair cross-examination and confrontation. *Davis v. Alaska,* (1974) 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347. The fact of the test as distinguished from the opinions of the operator regarding his opinion as to truth or falsity, would enhance rather than retard the weight and credit determining processes of the trier of fact. Considerations such as the fact that she was wired to the machine, was speaking to generate an opinion by the operator for use in court, and that the questions being posed were in a form dictated by the practice of polygraph operators, should be brought out.

This conviction rests in substantial part and in a real sense upon appellant's pre-trial admissions during the polygraph operation. The court's restrictive ruling precluded the jury from information which would have aided it in determining the meaning of the admissions, the level of certainty with which they were made, and the weight and probative quality which they may have had. I would reverse and remand this case for a new trial.